[No. 1042. Decided December 26, 1893.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN PORT TOWNSEND, *Appellant*.

CRIMINAL LAW — INFORMATION — DUPLICITY — FAILURE TO INDORSE NAMES OF WITNESSES ON INFORMATION — INSTRUCTIONS — NEWLY DISCOVERED EVIDENCE.

An information charging an assault with a deadly weapon is not bad for duplicity on the ground that it alleges the assault was made "without considerable provocation, and with a willful, malignant and abandoned heart."

Where a defendant in a criminal prosecution does not seek a continuance on the ground that the names of certain witnesses for the state had not been indorsed on the information before trial, but proceeds with the trial without objection, the presumption is that he considered himself ready for trial, and was not injured by want of notice.

Where the court in charging the jury reads to them the statute under which the information was drawn, the complete sense of which cannot be obtained without reading the whole section, it is not error for the court to read to the jury the penalty attaching to the offense.

Where a defendant has been misled into not making proper preparation for his defense by the statement of the prosecuting attorney that he did not intend to further prosecute the defendant, the defendant will be entitled to a new trial upon a showing of newly discovered evidence.

Where the testimony adduced at the trial of a criminal prosecution was exclusively that of Indians, given through the medium of interpreters, defendant is entitled, on a proper showing, to a new trial on the ground of newly discovered evidence, although cumulative in character, when the newly discovered evidence is shown to be that of a white witness.

*Appeal from Superior Court, Snohomish County.*

*Coleman & Hart*, for appellant.

*L. C. Whitney*, Prosecuting Attorney, and *James A. Haight*, for The State.

The opinion of the court was delivered by

DUNBAR, C. J.—The information in this case, omitting the formal part, is as follows:

"The said John Port Townsend, on the 9th day of May, 1893, in the county of Snohomish and State of Washington, did willfully and feloniously, with the intent to do great bodily harm to one Skagit Jerry, and without considerable provocation, and with a willful, malignant and abandoned heart, make an assault upon the person of the said Skagit Jerry with a deadly weapon, to wit, a certain pocket knife, and did then and there. beat, bruise, wound and ill-treat him, the said Skagit Jerry, against the peace and dignity of the State of Washington."

To this information the defendant demurred, on the ground that more than one offense was charged. The contention is, that the information is bad under § 1238 of the Code of Procedure, which provides that the indictment or information must charge but one crime and in one form only. This contention we think cannot be sustained, and it is not borne out by the authorities cited by appellant. In *State v. Goodwin*, 33 Kan. 538 (6 Pac. Rep. 899), the

defendant was charged with feloniously taking away from her father a certain female for the purposes of prostitution and concubinage, under the statute which provides that every person who shall take away any female, etc., for the purposes of prostitution or concubinage shall, upon conviction, be punished, etc., and the court very properly held the indictment bad for duplicity, because there were two distinct crimes charged in the conjunctive, and a misjoinder of two distinct felonies in one count. "If," says the court, "the appellant took away the female for the purposes of prostitution he would be guilty of one offense; but if he took her away for concubinage, but not for prostitution, he would be guilty of another offense;" and the court proceeds to show the difference, in fact, between the two different acts or crimes.

But there is no similarity between that case and the one at bar. The statute (Penal Code, § 23), under which this indictment was drawn, provides that, "an assault with a deadly weapon . . . with an intent to inflict upon the person of another a bodily injury, where no considerable provocation appears, or where the circumstances of the assault show a willful, malignant and abandoned heart, shall subject the offender to imprisonment," etc. The information follows the language of the statute, but instead of stopping with the allegation "where no considerable provocation appears," adds also the other condition mentioned by the statute, namely, "with a willful, malignant and abandoned heart." But the one crime only is charged, and that is an assault with a deadly weapon with intent to do great bodily harm, and when that is coupled with either of the conditions, namely, "without considerable provocation" or "with a willful, malignant and abandoned heart," a crime is made out; and it is as clearly made out when both the conditions accompany the act as when it is accompanied by one, and is exactly the same crime in both

instances. Either condition constitutes the crime; both together do no more.

The contention that the verdict was against the weight of the evidence we need not seriously consider. That was the main question for the consideration of the jury. The testimony was as conflicting as testimony could well be, and the verdict of the jury will not be disturbed by this court on that ground.

It is also contended by appellant that the court erred in permitting certain witnesses to testify whose names had not been indorsed on the indictment before the trial. There seems to have been no excuse for not indorsing the names of these witnesses on the indictment in compliance with the requirements of § 1230 of the Code of Procedure, and we do not now decide that any excuse would avail the state for the want of notice; but as the object of this statute is evidently only to give notice to the defendant who his accusers are, and to prevent him from being forced into trial without this knowledge, which would presumably enable him to intelligently prepare his defense, we do not think that a simple objection to the indictment is sufficient to warrant a reversal of the case. If it were true that by reason of a want of notice the defendant was not prepared for trial, he should have made that known to the court by a motion for a continuance. Not having done this, it is reasonable to presume that he considered himself ready for trial and that he was not injured by want of notice.

We do not see any merit in appellant's fourth and fifth assignments of errors. It is no doubt true that the jury has nothing to do with the penalty which attaches to offenses, but in this instance the court simply read to the jury the statute under which the information was drawn, and under the peculiar phraseology of that statute the complete sense could not be obtained without reading the whole

section.   We think the idea that the jury must have con-
cluded that the judge believed the defendant was guilty be-
cause the penalty was mentioned, is purely fanciful and not
warranted by the instruction.

The last contention of the appellant, however, that the
court should have granted a new trial upon the showing
made of newly discovered evidence, we think is meritori-
ous, and that the defendant was deprived of a substantial
right by the refusal of the court to grant a new trial for
the purpose of obtaining the testimony of the witness
House.   This application for a new trial was based upon
the affidavit of Louis F. Hart, defendant's attorney, and
the matters and things sworn to are undisputed.   The affi-
davit shows that the prosecuting attorney, in open session
of the court and in the presence of divers and sundry per-
sons, stated to the court that he did not intend to further
prosecute the defendant John Port Townsend, and that said
cause would be dismissed; that this statement was commu-
nicated to the defendant while he was confined in the
county jail, and was published in the Haller City *Times*, a
paper published and of general circulation in the com-
munity and neighborhood where the defendant and his
friends all reside; that by reason of said statement the de-
fendant and his friends, depending and relying on said state-
ment, failed and neglected to raise any money, or to
communicate or correspond with the defendant's attorneys
as to the advisability and necessity of procuring witnesses
to testify in defendant's behalf on the trial of the action;
that all of the witnesses upon said trial were Indians, and
that, at the time the judgment and sentence was passed
upon the defendant, the attorneys for this defendant nei-
ther of them knew or had any reason to believe that any
white person was an eye witness to the difficulty, row or
fight between defendant and Skagit Jerry on the night al-

leged in the information; that it is some twenty-five miles
from the jail where the defendant was confined to his home
where the difficulty occurred.

The law undertakes to guarantee to every person a fair
trial; and to insure a fair trial ample time for preparation
by the defendant must be given.   The prosecuting attorney
is the officer of the state to whose care and control the
prosecution of this defendant was committed by the law;
and if he made the statement attributed to him, in open
court, it was a statement which, if not carried into effect,
would be almost certain to mislead the defendant and his
attorneys, and cause them to cease their preparations for
defense.   That it was the cause of their not discovering
this testimony is certainly a reasonable theory, and must
be conceded under the allegations of the affidavit, which
are too numerous and lengthy to copy here.   The materi-
ality of the testimony of House cannot be disputed; but it
is urged that the testimony is cumulative, and that, there-
fore, a new trial should not be granted for the purpose of
obtaining it.   This, no doubt, is the general rule, but there
are many exceptions.   *State v. Stowe*, 3 Wash. 206 (28
Pac. Rep. 337).   In that case this court said:

"No fixed standard can be established for the measure-
ment of every case, no iron-bound rule prescribed, but each
case must be governed by the circumstances surrounding
it."

The circumstances surrounding this case appeal more
strongly to this court in favor of a new trial than did the
circumstances in the *Stowe* case.   In that case the defend-
ant was not misled by anyone; but he had failed, without
any fault on his part, of obtaining his testimony.   Here
the defendant had been actually misled by an officer of the
court and of the state.

But the prominent feature which takes it out of the rea-
son of the rule of cumulative testimony is the fact that the

witness required here is the only white witness in the case. The testimony adduced at the trial of the cause was exclusively the testimony of Indians, all of them evidently partisans on one side or the other, and in a very excited condition from the combined influences of hatred and rum at the time that the difficulty occurred.   Their testimony had to be given through the medium of interpreters, and was, at the best, disjointed, unintelligible and unsatisfactory; and whether the sentiment be founded in reason or prejudice, it is a fact well known to citizens of this coast that jurors will not give the same credence to Indian testimony as they will to the testimony of respectable white people.   In fact they have not the same facilities for judging the credibility of the Indian, who talks a foreign language, as they have of a witness who speaks their own language; and it cannot be denied that if the witness House would testify to the state of things which the affidavit states he will, that the result of the trial would probably be different; and if that be true, then the testimony will not fall within the inhibition of cumulative testimony.

We think, under all the circumstances of this case, the judgment should be reversed and a new trial allowed.

STILES and SCOTT, JJ., concur.

HOYT, J., dissents.

ANDERS, J., not sitting.