[No. 39611.     Department One.     August 29, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. VIRGINIA M. WHITE, *Appellant.**

*Reported in 444 P.2d 661.

*Delay & Curran, Joseph P. Delay,* and *Neil E. Johnson,* for appellant.

*George A. Kain* and *Donald C. Brockett,* for respondent.

HALE, J.—Defendant, a bookkeeper for a farmers' cooperative, appeals a 16-count conviction of embezzlement. She worked for Inland Farmers, Inc., which maintained both a store and feed department in Spokane. Because it bought feed and sold farm supplies, frequently to or from the same individuals through more or less interchangeable departments, Inland Farmers' bookkeeping system—to a layman, at least—would appear quite complicated.

A special audit for the year 1965 by a certified public accountant revealed that $18,000 in accounts payable had been withheld from the accounting figures. When the accountant mathematically restored this sum to the books for accounting purposes, he discovered that the gross margin of profit for feed came to only 10 per cent instead of the normally anticipated 18 or 19 per cent. Accordingly, he requested a detailed and comprehensive audit.

The accountant and others then produced evidence that, at weekly intervals—each week approximately corresponding to and later included in a separate count of an information—certain unexplained checks had been drawn on the Inland Farmers' account. In the bookkeeping, these checks had been charged to the company's "feed account," customarily used for stock feed purchases. No corroborating documents could be found to establish that the money had actually been disbursed therefrom in the purchase of feed. Ostensibly, these checks had been drawn on the feed account and then placed in what was called the "change account"—an account ordinarily used for the purchase· of

supplies, making change, cashing of checks for customers and sometimes for the purchase of grain and feed.

Inland Farmers' bookkeeping system, under which the defendant operated, utilized vouchers to preserve a record of disbursements by check. Attached to every change account check were two carbon copy vouchers, one pink in color and the other yellow, each of which would be filled out when the check was written. The yellow copy was to be kept for posting purposes and thereafter filed in a company vault. All disbursements from this account should, therefore, have been supported and verified by the duplicate yellow voucher, but no such yellow vouchers verifying the checks in question could be found among the company's records and books. The shortages thus discovered led to Mrs. White's arrest.

By amended information, the Prosecuting Attorney for Spokane County charged Virginia M. White with 16 counts of grand larceny. Each count described an embezzlement under RCW 9.54.010(3), accusing the defendant as an employee of Inland Farmers, Inc., of secreting, withholding and appropriating to her own use varying amounts of money at different times running from the sum of $698.11 in count 11 to $2,476.99 in count 7.

Count 1 charged an embezzlement of $2,455.36 on or about August 21, 1964; count 2, $1,578.30 on or about August 28, 1964; count 3, $2,293.03 on or about September 16, 1964; count 4, $2,471.27 on or about September 21, 1964; count 5, $2,262.25 on or about October 5, 1964; count 6, $2,426.92 on or about October 7, 1964; count 7, $2,476.99 on or about October 16, 1964; count 8, $2,090.76 on or about October 19, 1964; count 9, $2,211.38 on or about December 4, 1964; count 10, $1,667.51 on or about August 2, 1965; count 11, $698.11 on or about August 17, 1965; count 12, $1,310.91 on or about September 10, 1965; count 13, $2,426.32 on or about September 17, 1965; count 14, $1,437.83 on or about September 23, 1965; count 15, $2,043.03 on or about October 1, 1965; and count 16, $2,068.10 on or about October 15, 1965.

The jury returned a verdict of guilty on each of the 16 counts; the defendant appeals the judgment and concurrent sentences of 15 years' confinement entered thereon. Defendant notes 25 assignments of error, but consolidates them in groups for analysis and argument.

First, we will consider whether the record shows sufficient evidence to support the verdict of guilty. There was evidence that Virginia White had first gone to work at Inland Farmers as a secretary on June 1, 1955, and became a bookkeeper in 1956. Her first job as bookkeeper involved keeping the sales journal but later her duties expanded to maintaining the check register and reconciling the bank statements. Defendant contends that the evidence does not warrant a conviction because it does not establish directly that the money came into her hands and that there is no proof that she received the money or spent it. She thus contends the state failed to prove that she actually converted any of her employer's funds to her own use.

█ We would not depart from the rule reiterated in *State v. Gillingham,* 33 Wn.2d 847, 854, 207 P.2d 737 (1949), which affirmed the principle of *State v. Payne,* 6 Wash. 563, 34 Pac. 317 (1893), that no man should be convicted of a crime upon mere suspicion or because he may have had an opportunity to commit it, and where circumstances other than direct proof are relied on for a conviction they ought to be of such a character as to negative every reasonable hypothesis except that of defendant's guilt.

But we should consider those principles in conjunction with an equally well-established rule that deciding whether circumstantial evidence excludes to a moral certainty every reasonable hypothesis other than that of guilt is a question for the jury and not for the court if the evidence is legally sufficient to take the case to the jury. *State v. Gillingham, supra; State v. Long,* 44 Wn.2d 255, 266 P.2d 797 (1954); *State v. Lewis,* 55 Wn.2d 665, 349 P.2d 438 (1960). Where there is substantial evidence to prove each element of the embezzlement, even though the evidence may be conflicting and reasonable minds might draw different conclusions

from it, the case must go to the jury. *State v. Reynolds,* 51 Wn.2d 830, 322 P.2d 356 (1958).

Our study of the record leads us to the conclusion that there was ample evidence, which, if believed by the jury, showed that the defendant, in handling receipts and disbursements for her employer and depositing company funds in the bank and reconciling the bank account statements, cashed a number of company checks but never placed the money received therefrom in any company fund or in either of the two cash registers to which she had regular and routine access. From this evidence, the jury could well believe that Mrs. White had cashed the checks under a routine procedure of transferring the funds from the so-called feed account into the so-called change fund, ostensibly for the purpose of purchasing supplies, cashing checks and making change, but that the money coming into defendant's possession from the checks never left her possession and was not put into or expended in purchasing feed or for any other company purpose. The jury could reasonably infer from the evidence that, once the money came into defendant's possession, it never left there, and that she kept it for her own use. We are, therefore, of the opinion that the court properly submitted the cause to the jury and that the verdict was adequately supported by the evidence.

Defendant assigns error to a juror's handbook distributed to all prospective jurors when they reported to the presiding judge for Spokane County on the first day of the jury term. She contends that there is no statutory or constitutional authority for issuance of a juror's handbook to prospective jurors; that the handbook infringed defendant's rights under Const. art. 1, § 22 (amendment 10), and RCW 10.46.120, to be present in person and with counsel at every stage of her trial; and that the handbook amounted to instructing the jury outside the trial and in the defendant's absence. Defendant insists that the handbook constituted written jury instructions with no opportunity for her to take exception thereto.

The booklet in question, entitled "A Handbook for Trial Jurors," is 3¼ x 5 inches in size, and contains 24 printed pages. It says, *inter alia,* that "persons charged with crime shall be fairly and justly tried, that the public safety and welfare be protected on the one hand, and private rights and liberties be safeguarded on the other." Pointing out the difference between the verdict of 10 in civil cases and the unanimous verdict in criminal, the booklet mentions the differences between the preponderance of evidence required in civil as contrasted to proof "beyond all reasonable doubt" in criminal cases. It informs prospective jurors of what they may expect as to the trial procedures, *i.e.,* opening statements, examination of witnesses, objection to evidence, and rulings thereon by the court, and explains that the judge in his instructions will inform the jury as to the law applicable to the case and the issues to be decided by the jury. Stressing that jury service is an honor, and an important obligation of citizenship, the handbook describes jury duty as a responsibility to be avoided only for the most serious and genuine reasons.

■ We find that the Spokane County's juror's handbook contains in condensed form a fund of useful information which, in our opinion, should be helpful in orienting new jurors at the outset of their term to what surely must be novel duties. Nearly all of the material in it, we think, would be suitable for inclusion in a high school civics text concerning the trial courts. So generalized is the information set forth in these booklets that distributing them to all veniremen on their first reporting in for jury duty could not reasonably be construed to constitute the giving of instructions to jurors in the cases in which they might later be sworn to sit as jurors. Further, we find nothing in the handbook which could be said to abridge the constitutional or statutory rights of anyone accused of crime, nor anything in it which disparages or tends to abrogate such rights. The judge presiding must necessarily make some preliminary explanations to a new venire on its first appearance in the courthouse when inquiring in general as to

the qualifications of prospective jurors. We see no reason why the judge, in doing so, cannot properly outline to them their future responsibilities and duties. The booklet challenged here did nothing more than say to the new venire in print what the presiding judge could properly have said to them verbally.

Since the juror's handbook appears unobjectionable generally, the defendant had the burden of showing how it prejudiced her particularly and that she brought her objections timely to the court's attention. *State v. Cooney*, 23 Wn.2d 539, 161 P.2d 442 (1945). There being nothing in the handbook from which prejudice could generally be inferred, and the record disclosing no prejudice in particular pertaining to defendant, its routine issuance to prospective jurors did not constitute error.

Defendant urges error in the trial court's refusal to order a production of documents in possession of Inland Farmers, Inc., and denial of a continuance during trial to allow additional time for an inspection of records. The record discloses that defendant had ample time to prepare for trial. At all times represented by counsel, she was first charged by information with larceny by embezzlement October 5, 1966, in one count; entered a plea of guilty thereto October 31, 1966, with sentencing postponed to give the Inland Farmers' accountants time to determine the amount of the loss. Thereafter, February 3, 1967, the court, on defendant's application, allowed defendant to withdraw her plea of guilty. February 9, 1967, the prosecuting attorney filed the 16-count information, and defendant, on February 10, filed a demurrer, motion for inspection and production of documents and for a continuance. The court granted in part the motion to inspect and produce, denied the continuance February 17, 1967, and overruled the demurrer. Trial began March 6, 1967, and lasted until March 17, 1967.

Thus, with the filing of a 1-count information, defendant knew as early as October 5, 1966, that she was officially charged with larceny of money belonging to her employer, Inland Farmers, Inc. Sentence on that information was de-

ferred to enable both the defendant and the company to ascertain the amount of the loss for which defendant would be liable. The court thereafter allowed her to withdraw her plea of guilty. All of this took place before February 9, 1967, when the state filed the present 16-count information.

Next day, defendant filed a motion to produce and the trial court made available to her all of the records of Inland Farmers then in the possession of the prosecuting attorney. Two days after the trial began on March 6, 1967, the court granted defendant a recess from the afternoon of Thursday, March 9, to Monday morning, March 13, 1967, with a stipulation that defendant and counsel be allowed to look through the company's records at its office.

■ Production of records and other evidence for inspection by the defense, in advance of or during a criminal trial, rests largely in the trial court's discretion. Factors to be considered by the trial court in exercising this discretion include avoidance of surprise which reasonable diligence could have guarded against; reasonable time to discover and obtain evidence; a fair chance to prove material and relevant facts; and a timely opportunity to examine crucial evidence not otherwise, in the exercise of reasonable diligence, available for inspection in advance of trial. All such factors should be considered in consonance with the trial court's duty to keep the trial moving along in an orderly fashion.

Defendant and her counsel had ample time, opportunity and knowledge of the facts and circumstances from which the accusations arose to prepare for trial. There was no showing that the prosecution was withholding or concealing evidence material and relevant to the defense. In our judgment, the record fails to show any manifest abuse of discretion in refusing either to grant another continuance or to order further production of records. *State v. Gilman,* 63 Wn.2d 7, 385 P.2d 369 (1963); *State v. Mesaros,* 62 Wn.2d 579, 384 P.2d 372 (1963); *State v. Boehme,* 71 Wn.2d 621, 430 P.2d 527 (1967); *State v. Williford,* 64 Wn.2d 787, 394 P.2d 371 (1964).

Defendant assigns error to rebuttal evidence given by one Mr. Ludwick on the ground the witness's name had not been earlier listed, and also to the testimony of one Mr. Jentzsch, a certified public accountant who testified for the state on rebuttal as an expert witness. Treating these two contentions as in pari materia because they each concern the question of the court's discretionary powers in ruling on the admissibility of rebuttal evidence, we will first consider the listing of witnesses.

■ RCW 10.37.030 requires both the state, at the time the case is set for trial, and the defendant, within 5 days thereafter, to furnish each other with a list of witnesses intended to be called at trial—granting either party, as the court may in its discretion allow, the right to list additional witnesses at any time before trial. The object and purpose of this statute, of course, is to give the defendant notice of the evidence and enable him to prepare his defense (*State v. Townsend,* 7 Wash. 462, 35 Pac. 367 (1893)), and also to safeguard the state against surprise. *State v. Thomas,* 8 Wn.2d 573, 113 P.2d 73 (1941). But, in the final analysis in any given case, whether an unlisted witness may be called or whether the circumstances in the interests of due process and fair trial warrant a continuance falls within the sound discretion of the trial court. The court's decision to grant or deny a continuance will not be disturbed except for a manifest abuse of that discretion. *State v. Hunter,* 18 Wash. 670, 52 Pac. 247 (1898); *State v. Baker,* 150 Wash. 82, 272 Pac. 80 (1928); *State v. Willis,* 37 Wn.2d 274, 223 P.2d 453 (1950); *State v. Cooper,* 26 Wn.2d 405, 174 P.2d 545 (1946); *State v. Thompson,* 59 Wn.2d 837, 370 P.2d 964 (1962); *State v. Badda,* 68 Wn.2d 50, 411 P.2d 411 (1966); *State v. Noyes,* 69 Wn.2d 441, 418 P.2d 471 (1966).

■ Rebuttal evidence is admitted to enable the plaintiff to answer new matter presented by the defense. *W. E. Roche Fruit Co. v. Northern Pac. R.R.,* 184 Wash. 695, 52 P.2d 325 (1935). Genuine rebuttal evidence is not simply a reiteration of evidence in chief but consists of evidence

offered in reply to new matters. The plaintiff, therefore, is not allowed to withhold substantial evidence supporting any of the issues which it has the burden of proving in its case in chief merely in order to present this evidence cumulatively at the end of defendant's case. Ascertaining whether the rebuttal evidence is in reply to new matters established by the defense, however, is a difficult matter at times. Frequently true rebuttal evidence will, in some degree, overlap or coalesce with the evidence in chief. Therefore, the question of admissibility of evidence on rebuttal rests largely on the trial court's discretion, and error in denying or allowing it can be predicated only upon a manifest abuse of that discretion. *Croft v. Northwestern S.S. Co.*, 20 Wash. 175, 55 Pac. 42 (1898); *Pylate v. Hadman,* 151 Wash. 245, 275 Pac. 559 (1929); *W. E. Roche Fruit Co. v. Northern Pac. R.R., supra; Hardman v. Younkers,* 15 Wn.2d 483, 131 P.2d 177, 151 A.L.R. 868 (1942).

Where rebuttal witnesses are called by the prosecuting attorney for the purpose of meeting new matters raised by the defense in its case in chief, it is not error to admit the testimony even though the witness's name has not been endorsed upon the information or furnished to the defendant in advance of trial for genuine rebuttal witnesses need not be listed. *State v. Bashor,* 175 Wash. 230, 27 P.2d 121 (1933); *State v. Lowery,* 104 Wash. 520, 177 Pac. 355 (1918). Here, although there existed some overlapping in subject matter between the proof in the state's case in chief and the testimony given by witnesses Ludwick and Jentzsch, their testimony was largely in reply to new matters presented by the defense and their evidence genuinely rebuttal. We conclude that the trial court did not abuse its discretion in receiving it.

The defendant assigns error to several instructions and refusal to give certain proposed instructions and makes other assignments in addition. Our review of the record shows them to be without merit and requiring no further discussion.

Affirmed.

FINLEY, C. J., WEAVER and ROSELLINI, JJ., and WALTER-SKIRCHEN, J. Pro Tem., concur.

October 10, 1968. Petition for rehearing denied.