# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68436-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA PATRICK FALEALILI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 22, 2013 |
| | ) | |

VERELLEN, J. — Joshua Falealili appeals his conviction for second degree assault and felony violation of a no-contact order. He contends the nurse practitioner who treated the victim gave improper opinion testimony when she stated she did not believe the victim was trying to exaggerate any pain during a physical examination. Generally, a witness may not offer opinion testimony on another witness's credibility. Here, the nurse practitioner did not testify about the witness's credibility, but instead explained that the victim's responses to palpitations during the exam were consistent with the victim's reports of pain. The court did not err in admitting this testimony. We affirm Falealili's convictions.

## FACTS

On May 17, 2011, Joshua Falealili got in a fight with his wife, Nicole Brevik. Brevik testified that the fight began over a mailbox key, and the fight became physical. Brevik could not recall during her trial testimony exactly what happened during the fight.

Her statement to the police was read to the jury as a recorded recollection under ER 803(a)(5). She testified that Falealili punched her in the chin, which caused her to knock her head against a brick wall. She fell to the ground and became dizzy. Falealili got on top of Brevik, choking her until she could not breath. When Falealili released his grip, Brevik screamed, and Falealili started choking her again and again, telling her to stop screaming. Eventually Falealili released Brevik.

After the fight, Brevik went to work but continued to have dizzy spells. She went to the hospital, where nurse practitioner Amy Kanigher treated her. Brevik reported pain in her neck, pain in the back of her head, and dizziness. Kanigher conducted a physical examination, palpating the areas where Brevik had reported pain. Officers then interviewed Brevik at the hospital.

The State charged Falealili with one count of second degree assault by strangulation and one count of felony violation of a no-contact order, both with a domestic violence designation.[1] Falealili represented himself at trial.

On direct examination, Kanigher testified that she diagnosed Brevik with neck strain. She also testified that when she "palpated for a full exam, she was very tender."[2] On cross-examination, Falealili questioned Kanigher about the basis for her diagnosis. Falealili asked, "What actual tests did you do to determine this injury?"[3] Kanigher explained that she based her diagnosis on the physical examination, Brevik's reported

---

[1] The assault was the predicate offense for the felony violation of the court order. Had Falealili not committed the assault, the violation of the court order would have been a misdemeanor. RCW 26.50.110.

[2] Report of Proceedings (RP) (Jan. 31, 2012) at 115.

[3] Id. at 137.

history, and Brevik's verbal report of the mechanism of injury. Kanigher specifically explained that she based her diagnosis, in part, on Brevik's report of pain:

> Q.    What actual report other than her stating her history and her injury did you come up with neck strain?
>
> A.    Well, from my education and experience, a patient who reports the mechanism of injury that she was, in fact, reporting and given that she you know did have the scratches that would coincide with her story.
>
>        . . . .
>
> Q.    So basically off of your professional opinion and what she stated?
>
> A.    That's difficult to answer, but –
>
> Q.    If I'm wrong, just let me know, and then you can explain what else.
>
> A.    . . . I'm not going to say a hundred percent, yes, every time with every patient. But from what I recall, yes . . . .
>
>        . . . .
>
> A.    . . . It's the physical exam that I stated in the chart, as well as the patient's story and the mechanism of injury, so yes.[4]

On redirect examination, the State asked Kanigher follow-up questions about how she assesses a patient's pain:

> Q.    And is it a common occurrence that you ask people to . . . evaluate their pain as well?
>
> A.    Yeah. It's considered a vital sign. . . .
>
>        . . . .
>
> Q.    Have you ever had experiences where you felt like somebody was not being completely honest, if you will, about the level of pain that they say they have?

---

[4] RP (Jan. 31, 2012) at 139-41.

> MR. FALEALILI:    I object, your Honor. Speculation.
>
> THE COURT:    I'm going to allow it. I'll see where you go.

A.    Yes, I have.

Q.    And so when you're kind of testing someone, when you say you palpate. Are you looking for actual responses from the individual as well as what they say?

A.    Correct. . . .

Q.    And what kind of response – maybe it seems very obvious, but if you're touching somebody where it hurts, what kind of response could they have?

A.    Well, they may pull away, or they may say, ow, that hurts, or they may wince. . . . Sometimes if I'm not entirely convinced that a patient is forthcoming with their level of pain, I may try to distract them a little bit and palpate the same area to determine whether or not their pain is – is, you know, whether they're still wincing and showing signs of discomfort.

Q.    And did you have any concerns with Ms. Brevik that she was putting her pain on, if you will –

> MR. FALEALILI: I object, your Honor.
>
> THE COURT: I'm going to allow her to answer.

A.    No. I didn't feel that she was trying to exaggerate any pain, no.[5]

The jury found Falealili guilty of the crimes as charged.[6] Falealili timely appeals.

---

[5] Id. at 144-46.

[6] In a bifurcated proceeding, the jury found that Falealili and Brevik were members of the same family and that both offenses were aggravated crimes of domestic violence due to an ongoing pattern of abuse. At the sentencing hearing, the State agreed the predicate assault for the felony violation of a court order and the second degree assault were the same criminal conduct. The State therefore asked the court to enter a judgment on the lesser included offense of the misdemeanor violation of a court order.

## DISCUSSION

### Opinion Testimony

Falealili asserts the trial court erred by allowing Kanigher to give impermissible opinion testimony on Brevik's credibility. In general, a witness may not express a personal belief about another witness's credibility.[7] The credibility of a witness is a question for the jury.[8] To determine whether statements are in fact impermissible opinion testimony, we consider the circumstances of the case, including the following factors: (1) the type of witness involved; (2) the specific nature of the testimony; (3) the nature of the charges; (4) the type of defense; and (5) the other evidence before the trier of fact.[9]

Both parties rely heavily on State v. Sutherby, in which the court determined a mother had offered improper opinion on her daughter's credibility by telling the jury that her daughter, the victim, would make a half smile when she lied, but did not make a half smile when recounting the rape she suffered.[10] The court reasoned that the mother's testimony had invaded the province of the jury because she had essentially both told the jury that her daughter had told the truth while recounting the rape and gave the jury information "she claimed would enable the juror's to evaluate [the victim's] testimony."[11]

---

[7] State v. Montgomery, 163 Wn.2d 577, 591, 183 P.3d 267 (2008); State v. Carlson, 80 Wn. App. 116, 123, 906 P.2d 999 (1995); State v. Suarez–Bravo, 72 Wn. App. 359, 366, 864 P.2d 426 (1994).

[8] Suarez-Bravo, 72 Wn. App. at 366.

[9] State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (quoting City of Seattle v. Heatley, 70 Wn. App. 573, 579, 854 P.2d 658 (1993)).

[10] 138 Wn. App. 609, 617, 158 P.3d 91 (2007).

[11] Id.

Unlike the mother's testimony in <u>Sutherby</u>, Kanigher's testimony simply established that Brevik's behavior during the examination was consistent with her report of pain during the examination. Nor did Kanigher's testimony give the jury a means by which to analyze Brevik's other testimony about the circumstances of the assault and violation of the no-contact order—the jury was free to determine that even though Brevik accurately reported her pain during a physical exam, Brevik did not otherwise give credible testimony.

As the State correctly contends, Kanigher's testimony did not address whether she believed Brevik gave an honest account of the assault. Rather, viewed in context of the specific line of questioning, Kanigher, as a medical professional, testified on the limited issue of whether Brevik was accurately reporting the pain she experienced during the examination. Kanigher's testimony did not constitute an opinion on Brevik's truthfulness.

Even if Kanigher's testimony did amount to opinion testimony, Falealili opened the door by first questioning Kanigher about the bases for her diagnosis of a neck strain. The State is entitled to respond to evidence, including opinions elicited by the defendant. "A defendant may open the door to evidence that would otherwise be inadmissible, even if constitutionally protected, if the rebuttal evidence is relevant."[12] "Rebuttal evidence is admissible if not cumulative and if it answers new points raised by

_____

[12] <u>State v. Young</u>, 158 Wn. App. 707, 719, 243 P.3d 172 (2010).

the defense."[13] The admission of such evidence is within the court's discretion and will not be overturned absent a manifest abuse of that discretion.[14]

Falealili initiated the line of questioning into exactly how Kanigher made the diagnosis. The State then elicited Kanigher's testimony that Brevik accurately reported the pain she experienced from the assault, in direct response to Falelaili's questions about the "actual report" Kanigher used to diagnose the neck strain. Even if Kanigher's testimony did constitute an impermissible opinion, Falealili opened the door. Furthermore, the disputed testimony was relevant to the bodily harm element of second degree assault.[15] The court did not abuse its discretion in allowing Kanigher's testimony.

### Statement of Additional Grounds

Falealili asserts in his statement of additional grounds that the State committed a Brady[16] violation by withholding the transcript of a 911 call. Falealili supposedly made the emergency call after his wife bit him.[17] The trial court addressed Falealili's argument at a pretrial hearing. The court determined a Brady violation had not occurred because the State had never requested the transcript and did not intend to use it in its case in chief. Instead, the court determined the content of the call was an ER 404(b) issue, as it went "to the question of whether you have established that there was

---

[13] Id.

[14] State v. White, 74 Wn.2d 386, 394-95, 444 P.2d 661 (1968).

[15] RCW 9A.36.021(1)(g).

[16] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[17] It is unclear from the record when Falealili placed the 911 call.

domestic violence perpetrated towards the alleged victim in this case by the defendant when there is contradictory evidence that could have been produced."[18] We find no error in the trial court's analysis.

Affirmed.

_Uelmen, J._

WE CONCUR:

_Leach, C.J._

_Cox, J._

---

[18] RP (Jan. 17, 2012) at 142.