IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76421-7-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| BENSON LILO, | ) | |
| Appellant. | ) | FILED: July 9, 2018 |

BECKER, J. — Appellant was convicted of child sex abuse. At trial, appellant's wife testified that she had never observed inappropriate interaction between her husband and the child. The State presented a rebuttal witness who testified that when appellant's wife learned of the abuse allegations, she said, "I knew it." This was improper impeachment on a collateral matter and highly prejudicial because it conveyed an opinion on guilt. We reverse.

## FACTS

The State charged appellant Benson Lilo with five counts involving KS, his niece: first degree child rape, first degree attempted child rape, two counts of first degree child molestation, and one count of communication with a minor for immoral purposes. For conduct towards another niece, LS, Lilo faced a second count of improper communication with a minor.

No. 76421-7-I/2

detectives that he once touched KS on the thigh. He also admitted to showing KS images of naked people on his phone. He denied other acts of wrongdoing. Just after the interview concluded, Lilo cried while telling a detective that he had "trusted" KS. He said, "You can't trust other people's kids because they would go tell." The detective asked whether Lilo had molested KS. Lilo responded that he "trusted her" and "didn't hurt her." All of these statements were admitted at trial, over objections by Lilo.

On appeal, Lilo challenges the trial court's failure to enter written findings and conclusions upon deciding to admit his statements, as required by CrR 3.5(c). The court filed written findings and conclusions after Lilo submitted his opening brief on appeal. Lilo must establish that he was prejudiced by the delay or that the findings were tailored to meet the issues raised on appeal. State v. Quincy, 122 Wn. App. 395, 398, 95 P.3d 353 (2004), review denied, 153 Wn.2d 1028 (2005). He makes neither showing in his reply brief. The trial prosecutor, who prepared the findings and conclusions, stated in a declaration that she was unaware of the issues before this court. The written findings accurately reflect the evidence presented during a hearing on the admissibility of Lilo's statements. The written conclusions accurately reflect the court's oral ruling at the conclusion of the hearing. No relief is warranted on this issue.

Lilo claims a Miranda violation. Because his first language is Samoan, yet his Miranda warnings were provided in English, Lilo contends that his decision to speak with police was not knowing, intelligent, and voluntary—the standard for a valid waiver. State v. Teran, 71 Wn. App. 668, 671-72, 862 P.2d 137 (1993),

3

review <u>denied</u>, 123 Wn.2d 1021 (1994), <u>abrogation</u> <u>on</u> <u>other</u> <u>grounds</u> <u>recognized</u> <u>by</u> <u>State v. Neeley</u>, 113 Wn. App. 100, 104, 52 P.3d 539 (2002). In analyzing whether language barriers prevented a valid waiver, we consider the totality of the circumstances, including Lilo's background, experience, and conduct. <u>North Carolina v. Butler</u>, 441 U.S. 369, 375, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979).

The record adequately demonstrates Lilo's ability to understand English. He has lived in Washington for over a decade. He completed English language courses at a community college. He converses with family members in English. The arresting officers and the detectives who interviewed Lilo had no difficulty communicating with him in English. They did not find it necessary to provide an interpreter. Lilo did not ask for one. His comments during the interview were generally responsive to the questions asked. The detectives offered clarification when necessary. This unrebutted evidence provides substantial support for the trial court's findings that Lilo understood his <u>Miranda</u> warnings and knowingly waived his rights. <u>State v. Broadaway</u>, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). These findings, in turn, support the court's conclusion that Lilo's statements were admissible at trial. <u>State v. Gasteazoro-Paniagua</u>, 173 Wn. App. 751, 755, 294 P.3d 857, <u>review</u> <u>denied</u>, 178 Wn.2d 1019 (2013).

## REBUTTAL TESTIMONY

Lilo's wife was his only witness. She testified that she had many opportunities to observe interactions between KS and Lilo. She was asked, "Did you ever observe anything that caused you to believe that there was any inappropriate contact occurring" between KS and Lilo. She answered, "No." She

repeated this testimony on cross-examination. The prosecutor then proposed to call the victims' mother in rebuttal. The mother's testimony would be that on the day KS reported the abuse, Lilo's wife said, "I knew it, I can't even look at him" and pushed her hand in Lilo's face.

Lilo objected that the proposed testimony was "not truly rebuttal, but, in effect, an attempt to address collateral matters, not the issues involving the guilt or innocence of my client." The court ruled it admissible to impeach the wife's assertion that she observed nothing amiss. "It wouldn't come in for its truth, but the credibility of Ms. Lilo." The State was permitted to recall the mother and elicit the challenged testimony.

On appeal, Lilo contends that admission of the mother's rebuttal testimony was error. We review for an abuse of discretion. State v. White, 74 Wn.2d 386, 395, 444 P.2d 661 (1968). An abuse of discretion occurs when a ruling is based on untenable grounds or reasons. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

The State may present rebuttal evidence to respond to a new matter raised by the defense. White, 74 Wn.2d at 394. But while a trial court has discretion to determine whether a new matter has been raised, the court may not allow impeachment on a collateral matter—and an opinion on guilt is a collateral matter. State v. Johnson, 152 Wn. App. 924, 930, 219 P.3d 958 (2009). In Johnson, a child molestation case, the trial court erroneously permitted rebuttal testimony impeaching the defendant's wife, Stacy. In the defense case, Stacy denied the victim's version of a confrontation between the two of them shortly

5

after the abuse allegations emerged. The State presented a witness to rebut Stacy's denial of what happened in the confrontation. According to the rebuttal witness, Stacy actually said, "'Oh, my God, it's true,'" and apologized to the victim for not believing her. Johnson, 152 Wn. App. at 933. The State argued that testimony contradicting what Stacy said in the defense case was properly admitted in rebuttal to assist the jury in determining her credibility. The court rejected this argument:

> The first problem with this is that Stacy's opinion itself is entirely collateral. Thus, impeaching Stacy or any other witness on how Stacy reacted is impeachment on a collateral matter. See State v. Oswalt, 62 Wn.2d 118, 120-21, 381 P.2d 617 (1963) (a witness cannot be impeached on matters collateral to the principal issues being tried to avoid undue confusion of issues and to prevent unfair advantage over a witness unprepared to answer concerning matters unrelated or remote to the issues at hand (citing State v. Fairfax, 42 Wn.2d 777, 779-80, 258 P.2d 1212 (1953); 3 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS OR COMMON LAW § 1002, at 656 (3d ed. 1940))). Secondly, this testimony sheds little or no light on any witness's credibility or on evidence properly before the jury and really tells us only what Stacy believed—and the other witnesses thought Stacy believed—about TW's accusations. Finally, the State's witnesses' versions of Stacy's reaction were highly prejudicial: Johnson's own wife believed the accusations. This evidence was clearly more prejudicial than probative under ER 403. Furthermore, counsel's failure to object does not bar our review on appeal. This was a manifest constitutional error and Johnson can raise it for the first time on appeal.

Johnson, 152 Wn. App. at 933-34.

Here, the rebuttal testimony has the same problems identified in Johnson. Lilo's wife's reaction to the allegations is a collateral matter. Her alleged statement—"I knew it"— was elicited to show she believed her husband was guilty, which in the court's view impeached her direct testimony that she had never observed inappropriate contact between KS and Lilo. Counsel's failure to

object on the grounds of improper opinion testimony does not bar review because improper opinion testimony on guilt is manifest constitutional error. Johnson, 152 Wn. App. at 934.

Another similar case is State v. Lahti, 23 Wn. App. 648, 597 P.2d 937, review denied, 92 Wn.2d 1036 (1979). The defendant's wife, on cross-examination by the State, denied expressing any suspicion of her husband when their daughter first accused him of indecent liberties. The court allowed two prosecution witnesses to testify in rebuttal "that Mrs. Lahti had stated such suspicions to them." Lahti, 23 Wn. App. at 649. On appeal, the rebuttal testimony was held to be improper impeachment on the collateral matter of the wife's alleged suspicions of sexual abuse. The conviction was reversed.

It is "highly prejudicial" to let a jury hear that a wife believed an accusation that her husband sexually abused a child. Johnson, 152 Wn. App. at 934. Following Lahti and Johnson, we conclude that admission of the rebuttal evidence was an abuse of discretion and that the error requires reversal.

## PORNOGRAPHIC WEBSITES

Lilo contends the trial court further erred by admitting information extracted from his phone, namely, that he accessed specific pornographic content online. We address this issue because it may arise again on remand.

The jury heard from police witnesses that on June 27, 2014, Lilo's phone was used to search "'naked girl chat video'" and "'videochat naked video.'" The witnesses testified that on July 5, 2014, the phone was used to access websites

7

with provocative titles indicating that they contained obscene videos graphically displaying sex acts with very young girls.

The State contends the evidence was admissible to corroborate the testimony of KS and LS. KS and LS testified about times when Lilo used his phone to show them naked people and people doing "inappropriate things." KS said that she saw "different people like looking at you from the other side of the camera. And the people on the phone were—they were doing—they were doing inappropriate things"; "Some of them had their clothes off and like some of them would dance." LS testified that Lilo once used his phone to show her images of "naked kids." Neither girl recalled exactly when these incidents occurred.

What the two girls described seeing on Lilo's phone was not as blatantly pornographic and exploitative as the website titles would indicate. Thus, this information went beyond the bounds of allowable corroboration. And the testimony of the girls was already corroborated by Lilo's admission to the police that he showed KS inappropriate images on his phone.

The State offers a second justification: that the material on Lilo's phone helped to prove elements of the crimes, i.e., that Lilo acted for purposes of sexual gratification when he molested KS and that he acted for purposes of sexual misconduct when he engaged in improper communication with both girls. The State contends that the mere fact that Lilo looked at these websites leads to the inference that he was sexually aroused by young girls, and that touching KS and showing LS similar pornography "was intended to please his sexual desires."

8

It is a close question whether evidence that Lilo on other occasions used his phone to look at child pornography tends to prove that his misconduct with his nieces was intended to please his sexual desires, or whether it merely tends to prove a propensity to be aroused by young girls in general. But in any event, allowing the jury to hear the specific titles of the websites was unduly prejudicial and guaranteed to provoke an emotional response. "A careful and methodical consideration of relevance, and an intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudice potential of prior acts is at its highest." State v. Saltarelli, 98 Wn.2d 358, 363, 655 P.2d 697 (1982). In this case, a balancing of relevance versus prejudice requires, at a minimum, exclusion of the website titles.

Reversed.

Becker, J.

WE CONCUR:

Verellen, J.

Spearman, J.

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2018 JUL -9 AH 9:10