IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  37892-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JULIA ELIEEN NAPIER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Julia Napier was convicted of intentionally assaulting Spokane

County Sheriff's Deputy Clay Hilton, who was performing his official duties at the time.

She assigns error to the trial court's ruling admitting evidence for a rebuttal purpose that

she contends was not true rebuttal evidence, and challenges the sufficiency of the

evidence to support her conviction.

The State's witnesses' evidence was sufficient and to the extent its evidence

offered in rebuttal was cumulative, it was harmless.  We affirm.

FACTS AND PROCEDURAL BACKGROUND

Julia Napier and her sister, Patricia Murray, had traveled to a Spokane Valley restaurant and bar for food, drinks, karaoke, and pool one August evening when Darnai Vaile, a patron of the bar unknown to Ms. Murray, allegedly approached her as she played pool and kissed her without warning. When the karaoke disc jockey saw Ms. Murray swing a pool cue at Mr. Vaile in response, he asked her and Ms. Napier to leave. As Ms. Murray was leaving, she told patrons at the pool tables that she was going to call 911 to report an assault, and they scoffed at her.

Ms. Murray's 911 call was received at around 11:30 p.m. She told the dispatcher she had been assaulted and would await the responding officers' arrival outside.

The first deputies to respond were Michael Vicini and Clay Hilton. Approximately 10 people were standing in the bar side of the parking lot on their arrival. Although Deputy Vicini began by locating Ms. Murray and starting to question her, his and Deputy Hilton's attention was quickly deflected to Mr. Vaile, a very large man (6'10" and over 350 pounds) who appeared at the edge of the parking lot and looked to be approaching Deputy Vicini and Ms. Murray aggressively. Mr. Vaile's fists were clenched, he pushed past a friend who tried to stop him, and he angrily told Deputy Vicini he "want[ed] to tell [his] side." Report of Proceedings (RP) at 308. Mr. Vaile ignored the officers' orders that he calm down and Deputy Vicini's command that he stop

2

and sit on the curb. When Deputy Hilton told Mr. Vaile he was going to pat search him for weapons, Mr. Vaile backed away, yelled that he had a knife, and began reaching in his pockets for it. Rather than obey the deputies' commands that he remove his hands from his pockets, he overcame their efforts to control his hands, retrieved the knife, and tossed it on the ground. He later testified at trial that the knife had a pressurized blade and he was concerned that if one of the deputies grabbed it, it could open.

Deputy Griffin Criswell arrived. He could see that Deputies Hilton and Vicini each had one of the arms of Mr. Vaile, "a very large male," and they were in an obvious struggle to get him detained. RP at 399. By striking Mr. Vaile with his baton while the other deputies performed leg sweeps, he, Deputy Vicini, and Deputy Hilton, got Mr. Vaile to the ground. By this point, some of the onlookers had gathered closer to the officers and, unhappy with what was happening to Mr. Vaile, were yelling and screaming. According to Deputy Hilton, Ms. Napier and Ms. Murray had become the most obstructive onlookers; they had approached "within arm's reach" and were ordered to get back several times but refused to obey. RP at 254. As Deputies Criswell and Vicini continued to try to handcuff Mr. Vaile, Deputy Hilton stood up and told Ms. Napier that she was under arrest for obstruction. When he took control of her hands to handcuff her, he claims that she swung around and hit him in the face.

3

At trial, only Deputy Hilton and Deputy Criswell testified to witnessing Ms. Napier's third degree assault of Deputy Hilton. Following presentation of the defense case, the State proposed to offer rebuttal testimony from Deputy Hilton, to which Ms. Napier objected on the basis that the deputy would be "rehashing" his prior testimony rather than responding to any new matter presented by the defense. RP at 606. After hearing an offer of proof, the trial court ruled it would allow the testimony.

The jury found Ms. Napier guilty.[1] She moved for arrest of judgment and a new trial, arguing that most of the trial witnesses had seen no evidence of her alleged assault of Deputy Hilton. The motion was denied. She appeals.

ANALYSIS

Ms. Napier assigns two errors on appeal: that the trial court abused its discretion in permitting the State to present rebuttal testimony and that insufficient evidence supports her conviction.

I.    DEPUTY HILTON'S TESTIMONY, EVEN IF NOT TRUE REBUTTAL TESTIMONY, WAS HARMLESS

"Rebuttal evidence is admitted to enable the plaintiff to answer new matter presented by the defense." *State v. White*, 74 Wn.2d 386, 394, 444 P.2d 661 (1968). "[It] is not simply a reiteration of evidence," and the plaintiff "is not allowed to withhold

---

[1] By contrast, Mr. Vaile was found not guilty of the two counts of third degree assault with which he was charged in his and Ms. Napier's joint trial. He was found guilty of two counts of resisting arrest, a misdemeanor.

substantial evidence supporting any of the issues which it has the burden of proving in its case in chief merely in order to present this evidence cumulatively at the end of defendant's case." *Id.* at 394-95.

"Ascertaining whether the rebuttal evidence is in reply to new matters established by the defense, however, is a difficult matter at times," and "[f]requently true rebuttal evidence will, in some degree, overlap or coalesce with the evidence in chief. Therefore, the question of admissibility of evidence on rebuttal rests largely on the trial court's discretion, and error in denying or allowing it can be predicated only upon a manifest abuse of that discretion." *Id.* at 395. As with other evidentiary error, the admission of what is not true rebuttal evidence is harmless if we conclude it did not affect the outcome of trial. *State v. Burns*, 53 Wn. App. 849, 851, 770 P.2d 1054 (1989) (finding error in admitting rebuttal testimony, but holding error was harmless), *aff'd*, 114 Wn.2d 314, 788 P.2d 531 (1990); *City of Seattle v. Pearson*, 192 Wn. App. 802, 819, 369 P.3d 194 (2016) (reversal for evidentiary error is required only when the ruling materially affects the outcome of trial).

In the State's case-in-chief, Deputy Hilton provided the following testimony about the basis for Ms. Napier's third degree assault charge:

Q     [DEFENSE COUNSEL]:  I want to talk about Ms. Napier.  Did you tell Ms. Napier to get back?

A     Several times, yes.

Q     Did she respond?

A     She continued to yell and scream, and she did not follow my commands to get back; no.

Q     Did you give her any visual signals to get back?

A     I believe at some point, I put my hand up and was motioning for her to step back.

Q     Did she go back when you did that?

A     No.

Q     Based on her behavior, what, if any, actions did you take?

A     I told her she was under arrest for obstructing.

Q     What did you do after you told her she was under arrest?

A     Had her hands behind her back, had control of both hands with my left hand, and went to put her in handcuffs as I was pulling my handcuffs with my right hand.

Q     What, if anything, occurred as you were reaching for your handcuffs?

A     As I let go of her hands with my right hand to grab my handcuffs, she broke free and spun toward me, and hit me in the left side of the face.

Q     Can you show us where she hit you in the face?

A     Right under my left eye.

Q     Sir, based on your observations, was that blow to the face deliberate?

A     Yes.  It took force to get her hands out of my hand, and she intentionally spun and swung her arm toward my face.

Q     Sir, again, was that blow purposeful?

A     Yes.

RP at 255-56.

6

Ms. Napier testified in her own behalf. She testified that the only action she took as she watched the officers get Mr. Vaile to the ground and handcuff him was to "lean[ ] over a little bit, moved my arms like this, and said, please, officers, he's a nice man. That was it." RP at 551. She testified that after the officers had Mr. Vaile on the ground, Deputy Hilton told her to step back so she did, three to four feet. She testified that the following happened next:

A After I stepped back, I turned to my right to make sure my sister was okay, Patty Murray, and then all of a sudden, before I knew it, I was up in the air and slammed to the ground, and all I remember saying is "ow, ow, ow."

Q Okay. Is it something that happened very quickly, or is it something where you were grabbed ahold of and then struggled, and then you were thrown?

A It was very quickly, within seconds.

Q Okay. And do you know who it was that threw you on the ground?

A No, I don't.

Q Okay. Would it—do you know if it was a law enforcement officer or a citizen?

A Well, there were three law enforcement on me.

Q Okay.

A So I would assume it was one of them.

Q Okay. At any point, did you spin around and strike one of the officers?

A Absolutely not.

RP at 552-53. Defense counsel then questioned Ms. Napier about Deputy Hilton's testimony that she swung around to hit him after he grasped her wrists:

7

Q      Do you recall, did the officer grab you by your left arm or rig [sic] your right arm?  Do you recall any of those details?

A      Yes, I do, but no, that was not how it happened.

Q      How did it happen?

A      I was grabbed from behind.

Q      Okay.

A      Both my arms.

Q      Okay.  So you were grabbed from behind, both your arms and then describe for me what happened at that point.

A      It was very vicious, just grabbed and boom, bam, down on the ground.

Q      Okay.  When you were grabbed with your hands—I'll give you a second.  Ms. Napier, when you were grabbed behind your back, did you pull your hands away and spin around and strike the officer?

A      No, I did not.

RP at 556.

When the prosecutor told the trial court he wished to call Deputy Hilton for rebuttal testimony, it was not because the jury had heard new evidence from Ms. Napier that new rebuttal evidence would show to be wrong or improbable.  The State made the following offer of proof:

Ms. Napier's rendition of what occurred about the way she spun was opposite of what actually happened, and I was going to reaffirm the procedure of what happened and have the deputy go over that and as far as his recalling of that, how many times in his 18-year career he's been hit in the face is why he specifically remembers the details of this particular event.

8

RP at 606. This was evidence that was presented in the State's case-in-chief or could have been; it had not become relevant for the first time based on Ms. Napier's testimony. Nevertheless, the rebuttal testimony offered by the State was only a brief recount of Detective Hilton's prior testimony with an explanation of why he recalled it clearly. It takes up less than two pages of the report of proceedings. Even if the trial court can be said to have abused its discretion in allowing the rebuttal testimony, we are satisfied that it did not materially affect the outcome of the trial.

II.      SUFFICIENCY OF THE EVIDENCE

Ms. Napier also challenges the sufficiency of the evidence, arguing that only two of the trial witnesses—Deputy Hilton and Deputy Criswell—testified to having seen her commit the third degree assault.

In reviewing a challenge to the sufficiency of evidence, the test is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In a criminal case, an insufficiency claim "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.*

Credibility determinations are for the trier of fact and are not subject to review. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004), *aff'd*, 166 Wn.2d 380, 208 P.3d 1107 (2009). Accordingly, this court defers to the trier of fact on issues of

conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *Id.* at 874-75. We will assess only whether "there was substantial evidence from which the trier of fact could infer that the burden of proof had been met and that the defendant was the one who perpetrated the crime." *State v. Johnson*, 12 Wn. App. 40, 45, 527 P.2d 1324 (1974). Substantial evidence means evidence in the record of a sufficient quantity to persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994); *see State v. Williams*, 96 Wn.2d 215, 222, 634 P.2d 868 (1981).

Viewing the evidence in the light most favorable to the State, Deputy Hilton's testimony that he was assaulted by Ms. Napier was sufficient, and was corroborated by the testimony of Deputy Criswell. Although two other deputies, Deputy Vicini and later-arriving Deputy James Wang, did not see Ms. Napier assault Deputy Hilton, their testimony did not hurt the State's case. Deputy Vicini testified that he witnessed Ms. Napier ignore Deputy Hilton's commands that she get back from where the two deputies were trying to handcuff Mr. Vaile, that he witnessed Deputy Hilton stand up and tell Ms. Napier that she was under arrest for obstruction, and that he saw her "sp[i]n on him and pull[ ] away" from Deputy Hilton when he attempted to put her hands behind her back. RP at 314. The only thing Deputy Vicini said he did not see "from [his] angle" was Ms.

Napier make contact with the deputy. *Id.*; RP at 334. Deputy Wang arrived after Ms. Napier had been arrested.

As the State points out, the trier of fact could have questioned the credibility of the witnesses who claimed Ms. Napier had not committed assault. Most of those witnesses had relationships with Mr. Vaile, Ms. Murray or Ms. Napier, or had been drinking. We have no basis for rejecting the jury's credibility determinations.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____  _____
Pennell, J.           Staab, J.