IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| CITY OF SEATTLE, | ) | No. 78071-9-I |
| | ) | consolidated with |
| Appellant, | ) | No. 81430-3-I |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM LANGE, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |
| | ) | |

VERELLEN, J. — A defendant may request discovery of impeachment information under CrRLJ 4.7(a). When the information is discoverable, CrRLJ 4.7(d) can require prosecutors to seek and disclose such information even if they lack actual possession of it. And if a prosecutor violates their discovery obligations under CrRLJ 4.7, then the trial court has discretion under CrRLJ 4.7(g)(7)(i) to impose a sanction, such as suppression. The rule does not require a showing of materiality or prejudice to support the imposition of a sanction less severe than dismissal. Because the City of Seattle (City) violated its discovery obligations under CrRLJ 4.7 and the municipal court did not act illegally by suppressing evidence related to the discovery violation, the superior court did not err by denying the City's request for a writ of review of the suppression decision.

When a trial court abuses its discretion by threatening to admit a highly prejudicial and largely irrelevant exhibit to leverage the defendant into agreeing to stipulations that all but compel findings of guilt on charges against him, the resulting predicament precludes a fair trial. Because the municipal court engaged in such an abuse of its discretion, depriving William Lange of a fair trial, the superior court did not err by reversing Lange's convictions on RALJ appeal.

Therefore, we affirm both the superior court's denial of the City's request for a writ of review and reversal of Lange's convictions on RALJ appeal.

## FACTS

William Lange went to a drug store in Seattle to drop off a prescription and asked an employee for help finding the pharmacy. The employee noticed Lange smelled of alcohol, could not walk in a straight line, was slurring his words, and was hanging onto shelves for support. He concluded Lange was intoxicated. When Lange left, the employee followed him to make sure he exited the store. Lange got into the driver's seat of a car. Believing that Lange should not drive, the employee called 911.

Seattle police Officers Brian Grozav and David Warnock responded. Both concluded Lange was intoxicated and arrested him for driving under the influence (DUI). Officer Warnock noticed that Lange's car did not have an interlock ignition device (IID). Lange refused a sobriety test, so the officers obtained a warrant and took a blood draw. Forensic scientist David Nguyen of the Washington State Patrol Crime Laboratory (WSP) analyzed Lange's blood and authored a report of the results. The City of Seattle initially charged Lange with DUI and later added

charges for driving with a suspended license (DWLS) in the third degree and operating a motor vehicle without an IID.

The morning of jury selection, the municipal court excluded the blood test report because the City had failed to disclose impeachment evidence about Nguyen. The court also allowed a limited admission of exhibit 13, an abstract from the Department of Licensing summarizing Lange's lengthy driving record, provided that the City was to redact all information not pertinent to the IID and DWLS charges. Exhibit 13 included multiple, unrelated DUIs. The parties conducted voir dire and empaneled a jury.

The next morning, as the jury waited outside the courtroom, the court changed course. It announced it would admit exhibit 13 without redaction unless Lange agreed to two stipulations: that his driving record included an IID notation and that his license had been suspended and was eligible for reinstatement at the time of arrest. The court recognized that the stipulations "would lead" to Lange being found guilty on two of the three charges against him.[1] Lange initially refused, instead seeking to sever the DUI charge from the IID and DWLS charges. After the court denied his motion as untimely, he agreed to the stipulations. The jury found him guilty of all three charges.

The City sought a writ of review regarding the municipal court's decision to suppress the blood test report. Lange filed a RALJ appeal with the superior court, contending the municipal court abused its discretion by excluding the unredacted

---

[1] Clerk's Papers (CP) at 659.

exhibit only if he agreed to the stipulations. The superior court denied the City's request for a writ of review. On RALJ appeal, it reversed Lange's convictions. The City sought discretionary review of denial of the writ and reversal of Lange's convictions. A commissioner of this court granted review under RAP 2.3(d)(3).

ANALYSIS

I. Writ of Review

We review a decision to deny a writ of review de novo.[2] A writ of review is "'an extraordinary remedy'" that "'should be granted sparingly.'"[3] Under RCW 7.16.040, a superior court should not issue a writ of review for a lower court unless it "(1) exceeded its authority or acted illegally, and (2) no appeal nor any plain, speedy, and adequate remedy at law exists."[4] The writ cannot issue unless both elements are present.[5] A lower court acts illegally when it "'has committed probable error and the decision substantially alters the status quo or substantially

---

[2] Blomstrom v. Tripp, 189 Wn.2d 379, 389, 402 P.3d 831 (2017) (citing City of Seattle v. Holifield, 170 Wn.2d 230, 240, 240 P.3d 1162 (2010)).

[3] Holifield, 170 Wn.2d at 239-40 (quoting City of Seattle v. Williams, 101 Wn.2d 445, 455, 680 P.2d 1051 (1984)).

[4] Id. at 240. The City cites Blomstrom, 189 Wn.2d at 405-06, for the proposition that a superior court should issue a writ of review when the trial court fails to make adequate findings of fact. But the Blomstrom court did not hold the writ should issue whenever a trial court fails to make findings of fact. 189 Wn.2d at 404-06. Rather, it concluded the writ should have issued because, among other reasons, the trial court imposed pretrial release conditions under CrRLJ 3.2(d) when the findings did not support applying that rule. Id. at 405-06. Because the inadequate findings meant the pretrial release conditions subjected the defendant to unauthorized warrantless searches in violation of article I, section 7, the writ should have issued. Id. at 406, 411.

[5] Holifield, 170 Wn.2d at 240 (quoting Commanda v. Cary, 143 Wn.2d 651, 655, 23 P.3d 1086 (2001)).

limits the freedom of a party to act.'"[6]  Because the parties do not dispute whether the municipal court's ruling substantially altered the status quo, the issue is whether it committed probable error.

The City argues the municipal court erred when it suppressed the blood test results as a sanction for violating CrRLJ 4.7, CrRLJ 8.3(b), and the constitutional discovery requirements of Brady v. Maryland.[7]  However, if the trial court's basis for denying the writ was correct, then our review ends.[8]  Because the superior court limited its analysis to whether the municipal court violated CrRLJ 4.7, we begin by reviewing whether the municipal court committed probable error by relying on CrRLJ 4.7 to suppress the blood test report.

Lange's trial was set for September 19, 2017.  That morning, the City received the results of WSP forensic scientist Nguyen's analysis on Lange's blood and provided the report to Lange.  Lange requested a continuance for time to investigate Nguyen, and trial was rescheduled to October 31.

Days before trial, Lange obtained an April 2017 corrective action report about Nguyen.  The report documented mistakes by Nguyen in another case that

---

[6] State v. Chelan County Dist. Court, 189 Wn.2d 625, 631, 404 P.3d 1153 (2017) (quoting id. at 244-45).  A court also acts illegally when it "'has committed an obvious error that would render further proceedings useless'" or "'has so far departed from the accepted and usual course of judicial proceedings as to call for the exercise of revisory jurisdiction by an appellant court.'"  Id. (quoting Holifield, 170 Wn.2d at 244-45). These standards are not alleged here.

[7] 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed 2d 215 (1963).

[8] See Chelan County Dist. Court, 189 Wn.2d at 632 (declining to consider the merits underlying denial of a writ of review when denial of the writ "was correct").

caused a false positive. Neither WSP nor the City ever provided the report, despite disclosing more than 3,500 pages of records in response to Lange's discovery requests.

The City makes several arguments about why the trial court lacked the authority under CrRLJ 4.7 to suppress the blood test report. None are persuasive. The City conflates the requirements for imposing sanctions for discovery violations under CrRLJ 4.7 with CrRLJ 8.3(b) or with Brady when each rule serves a different, although sometimes overlapping, purpose.

It is long-established that a primary purpose of Washington's criminal discovery rules, including CrRLJ 4.7, is to ensure a fair trial by safeguarding the defendant's ability to prepare a defense and to safeguard the prosecution from surprise.[9] CrRLJ 8.3 "exists 'to see that one charged with [a] crime is fairly treated'" throughout the entire prosecution.[10] And the constitutional standards articulated in Brady establish the minimum due process protections a defendant enjoys around discovery.[11] Because each has a different purpose, each has a distinct analysis. Here, our focus is CrRLJ 4.7.

---

[9] See State v. White, 74 Wn.2d 386, 394, 444 P.2d 661 (1968) (analyzing RCW 10.37.030, the precursor to CrR 4.7) (citing State v. Townsend, 7 Wash. 462, 35 P. 367 (1893); State v. Thomas, 8 Wn.2d 573, 113 P.2d 73 (1941)).

[10] State v. Michielli, 132 Wn.2d 229, 245, 937 P.2d 587 (1997) (quoting State v. Whitney, 96 Wn.2d 578, 580, 637 P.2d 956 (1981)); see, e.g., State v. Jieta, 12 Wn. App. 2d 227, 457 P.3d 1209 (affirming dismissal of criminal charges under CrRLJ 8.3(b) where mismanagement by court administrative staff effectively deprived a defendant of interpreter services and assistance of counsel), review denied, 195 Wn.2d 1025 (2020).

[11] See Kyles v. Whitley, 514 U.S. 419, 432, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) ("Brady held 'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is

The City contends CrRLJ 4.7 did not authorize suppression because the plain language of the rule limits its discovery obligations to evidence within its "actual knowledge, possession, or control," and only WSP possessed the corrective action report on Nguyen.[12] Lange contends CrRLJ 4.7(d) required that the City provide the report because it was discoverable under CrRLJ 4.7(a).

CrRLJ 4.7 defines discovery obligations for both the prosecution and defense.[13] The philosophy behind the rule favors openness and ready disclosure: "'The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played.'"[14] The criminal discovery rules were intended "'to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process.'"[15]

---

material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'") (quoting 373 U.S. at 87).

[12] Appellant's Br. at 30.

[13] State v. Linden, 89 Wn. App. 184, 190, 947 P.2d 1284 (1997). Although Linden and other cases cited discuss the Criminal Rules for Superior Courts (CrR), cases interpreting parallel procedural rules for superior courts provide apt guidance for the Criminal Rules for Courts of Limited Jurisdiction (CrRLJ). Jieta, 12 Wn. App. 2d at 230 n.3 (citing Holifield, 170 Wn.2d at 238).

[14] State v. Coe, 101 Wn.2d 772, 783, 684 P.2d 668 (1984) (quoting Williams v. Florida, 399 U.S. 78, 82, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970)).

[15] State v. Yates, 111 Wn.2d 793, 797, 765 P.2d 291 (1988) (quoting Criminal Rules Task Force, Washington Proposed Rules of Criminal Procedure 77 (West Pub'g Co. ed. 1971)).

For example, CrRLJ 4.7(a)(1)(i) mandates disclosure of the contact information and written statements of any person the prosecutor intends to call as a witness, and CrRLJ 4.7(a)(1)(vii) mandates disclosure of any expert witnesses who will be called to testify along with the subjects of their testimony and any related reports. Most pertinent here, CrRLJ 4.7(a)(3) imposes a broad mandate upon the prosecutor to "disclose to defendant's lawyer any material or information within his or her knowledge which tends to negate defendant's guilt as to the offense charged." The rules exist "to ensure a fair trial, among other things, so that rebuttal testimony may be obtained and more particularly so that impeachment evidence may be ascertained."[16]

The City argues the scope of "discoverable information" under CrRLJ 4.7(a)(3) is limited to information considered "material" under the federal constitution, as defined in Brady.[17]

Before concluding a Brady violation occurred, a court must conclude the undisclosed information was "'material either to guilt or punishment.'"[18] But the plain terms of CrRLJ 4.7(a)(3) do not require proof of materiality before mandating disclosure, and our Supreme Court has noted that the absence of constitutional materiality "does not relieve prosecutors of the obligation to disclose impeachment evidence."[19] For example, in State v. Grieff, the court concluded the State violated

---

[16] State v. Vavra, 33 Wn. App. 142, 145, 652 P.2d 959 (1982).

[17] Appellant's Br. at 10-11.

[18] Strickler v. Greene, 527 U.S. 263, 280, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (quoting Brady, 373 U.S. at 87).

[19] State v. Davila, 184 Wn.2d 55, 79 n.9, 357 P.3d 636 (2015).

CrR 4.7 when it failed to disclose "information that was discoverable under

CrR 4.7(a)(1)(i)."[20]  The court considered whether the State had a duty to disclose

the information and whether it did so, not whether the information was "material"

under Brady.[21]

The City also relies on State v. Blackwell,[22] State v. Bebb,[23] and State v.

Ervin[24] for its argument, but this authority is not compelling.  Blackwell states that

"CrR 4.7(a) lists the prosecutor's obligations in engaging in criminal discovery," but

the defendant seeking disclosure must demonstrate the information requested is

material when, pursuant to CrR 4.7(e), he "requests disclosure beyond what the

prosecutor is obliged to disclose."[25]  In other words, a defendant must prove Brady

materiality only when the information sought is not discoverable under sections

(a), (c), or (d) of the rule.[26]  Blackwell does not support the proposition that a

---

[20] 141 Wn.2d 910, 919-20, 10 P.3d 390 (2000).

[21] Id.

[22] 120 Wn.2d 822, 826, 845 P.2d 1017 (1993).

[23] 44 Wn. App. 803, 817, 723 P.2d 512 (1986).

[24] 22 Wn. App. 898, 904 n.1, 594 P.2d 934 (1979).

[25] 120 Wn.2d at 828 (emphasis added) (citing State v. Mak, 105 Wn.2d 692, 704, 718 P.2d 407 (1986) (citing CrR 4.7(e)(1))).

[26] CrR 4.7(e)(1) provides, "Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court in its discretion may require disclosure to the defendant of the relevant material and information not covered by sections (a), (c) and (d)."  Similarly, CrRLJ 4.7(e)(1) provides, "Upon a showing of materiality and if the request is reasonable, the court in its discretion may require disclosure of the relevant material and information not covered by sections (a) and (d)."  Despite the seeming differences between the two rules, the scope of CrR 4.7(e)(1) matches CrRLJ 4.7(e)(1) because CrRLJ 4.7(a) contains the discovery requirements set out in CrR 4.7(c).

defendant is not entitled to information discoverable under CrRLJ 4.7(a) until he proves it is material to his guilt or innocence.

Bebb is unpersuasive because it assumes the scope of discovery mandated by CrR 4.7 is limited to federal constitutional requirements. Bebb cited State v. Campbell[27] to assert that CrR 4.7(a)(3) "codifies the prosecutor's constitutional duty to disclose exculpatory matter to the defense."[28] But Campbell did not address CrR 4.7 and limited its analysis to the prosecutor's constitutional duty to disclose.[29] Bebb does not otherwise explain why the scope of the discovery rules is the same as the minimum standards set by the constitution. Ervin makes the same assumption as Bebb, explaining only that CrR 4.7(a)(3) and (a)(4) "were included to satisfy the requirements of Brady v. Maryland."[30] Neither case directly considered CrR 4.7 to determine whether it places a broader duty on the prosecutor than the Constitution.

Indeed, the assumption in Ervin and Bebb is at-odds with the Supreme Court's reasoning in State v. Coe, which directly addressed the discovery obligations of CrR 4.7.[31] In Coe, the defendant alleged CrR 4.7 was violated

---

[27] 103 Wn.2d 1, 17, 691 P.2d 929 (1984).

[28] 44 Wn. App. at 817.

[29] 103 Wn.2d at 17-19.

[30] 22 Wn. App. at 904 n.1 (citing Criminal Rules Task Force, Washington Proposed Rules of Criminal Procedure 70). Even if the discovery rules were enacted to comply with Brady, Ervin does not explain why they could not comply by going beyond the constitutional minimum when the language of CrR 4.7 and the case law interpreting it supports doing so.

[31] 101 Wn.2d at 783-85.

because the prosecutor refused to disclose witnesses' statements to the police, providing only their names and addresses.[32] The court agreed.[33] It explained, "The State cannot meet its obligations under CrR 4.7(a)(3) to provide <u>any</u> exculpatory information by dribbling out a name and address with nothing more. Persons who are on trial for commission of a crime are entitled to all information contemplated under CrR 4.7."[34] This conclusion aligns with the discovery rules' purpose of ensuring a fair trial by avoiding surprise to both the defendant and the prosecutor.[35]

Considering the philosophy, intent, and text of CrRLJ 4.7(a), CrRLJ 4.7(a)(3) makes discoverable any impeachment information about witnesses who the prosecution intends to call.[36] The City intended to call Nguyen to convict Lange of DUI for driving with a blood-alcohol level above the legal limit. The corrective action report detailed how, at least once, Nguyen created a false positive by switching blood vials. The report undermined Nguyen's credibility, making it impeachment information. Because it was impeachment information about an intended witness for the prosecution, the corrective action report was discoverable under CrRLJ 4.7(a)(3).

---

[32] <u>Id.</u> at 783.

[33] <u>Id.</u> at 784.

[34] <u>Id.</u>

[35] <u>Yates</u>, 111 Wn.2d at 797; <u>White</u>, 74 Wn.2d at 394.

[36] <u>Yates</u>, 111 Wn.2d at 797; <u>Vavra</u>, 33 Wn. App. at 145; <u>accord</u> CrR 4.7(a)(3) (making discoverable "any material or information within the prosecuting attorney's knowledge . . . that tends to impeach a State's witness.").

The City's automatic discovery obligations under CrRLJ 4.7(a) are "complemented by" CrRLJ 4.7(d).[37]  CrRLJ 4.7(d) "imposes a continuing obligation on the prosecutor to seek the disclosure of discoverable information not in his or her control."[38]

> Upon defendant's request and designation of material or information in the knowledge, possession or control of other persons which would be discoverable if in the knowledge, possession or control of the prosecuting authority, the prosecuting authority shall attempt to cause such material or information to be made available to the defendant.[39]

The prosecutor should notify the court if those efforts are unsuccessful.[40]

In July 2017, months before trial, the City disclosed the names of the 20 expert toxicology witnesses who might testify, the general nature of their likely testimony, and where Lange could find their curricula vitae.  Nguyen was one of the potential witnesses.  A few days later, Lange requested discovery "pursuant to CrRLJ 4.7" seeking "the following material and information within the knowledge, possession or control of the City, its agents and subordinates, or law enforcement agencies," including "[a]ny and all documents, statements, reports or other information for each City's witness regarding: . . . [a]ny other information that adversely reflects on the credibility of the witness."[41]

---

[37] State v. Salgado-Mendoza, 189 Wn.2d 420, 428, 403 P.3d 45 (2017).

[38] Id. at 430.

[39] CrRLJ 4.7(d).

[40] Salgado-Mendoza, 189 Wn.2d at 430 (citing Blackwell, 120 Wn.2d at 832).

[41] CP at 154-56.

Under CrRLJ 4.7(d), this was sufficient to trigger the City's duty to seek and disclose. Although Lange's request for "any" impeachment information was broad, it was limited to information held by the City or entities acting on its behalf and only for the City's witnesses. Six weeks before trial, the City knew Nguyen would be testifying because Lange was charged with DUI and Nguyen analyzed his blood. During that time, the City's discovery obligations continued.[42] It knew Nguyen would be a critical witness because only he could testify about Lange's blood-alcohol content. It knew Lange had requested impeachment materials, whether held by it or by another agency, about the witnesses who would be testifying. Lange requested any impeachment information for Nguyen, and the City had a continuing obligation under CrRLJ 4.7(d) to seek out and disclose the corrective action report held by WSP.

The City argues Lange's request for discovery was insufficient because he did not "designate the corrective action report" in his request for discovery.[43] The City proposes a narrow, unworkable standard because it would require a defendant to know of the existence and specific nature of discoverable material in order to request it. The discovery rules are intended to minimize surprise and

---

[42] Salgado-Mendoza, 189 Wn.2d at 428 (citing CrRLJ 4.7(d)); see CrRLJ 4.7(g)(2) (explaining CrRLJ 4.7 imposes a continuing duty to disclose).

[43] Reply Br. at 2.

strengthen cross-examination.[44]  The City provides no compelling support for such an approach when it is counter to those goals.[45]

The City never disclosed the corrective action report to Lange.  Because it had a duty to seek out and disclose the report and failed to do so, the City violated CrRLJ 4.7.

CrRLJ 4.7(g)(7) provides the court with the discretion to impose sanctions for violations of the discovery rules.[46]  The City contends the municipal court erred when it sanctioned the City because Lange failed to demonstrate prejudice from the discovery violation.  The City's argument is not compelling because it again conflates different standards governing discovery violations.

Before entering a remedy for a constitutional Brady violation, a court must find "(1) [t]he evidence at issue [was] favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued."[47]  In Washington, one remedy for a Brady violation can be

---

[44] Yates, 111 Wn.2d at 797; Coe, 101 Wn.2d at 784.

[45] The City also appears to argue Lange's discovery request should be limited only to information directly from his case, thereby excluding the corrective action report because the error occurred in a different case.  The City's view of its discovery obligations conflicts with the spirit and letter of the criminal discovery rules.

[46] State v. Barry, 184 Wn. App. 790, 796, 339 P.3d 200 (2014) (citing State v. Bradfield, 29 Wn. App. 679, 682, 630 P.2d 494 (1981)).

[47] In re Pers. Restraint of Brennan, 117 Wn. App. 797, 805, 72 P.3d 182 (2003) (citing Strickler, 527 U.S. at 281-82).

dismissal pursuant to CrR 8.3(b).[48] Like Brady, CrR 8.3(b) also requires a finding

of prejudice to the defendant to warrant a remedy. Similarly, CrRLJ 4.7(g)(7)(ii)

authorizes dismissal if the court finds a discovery violation was willful or resulted

from gross negligence and finds it prejudiced the defendant. But those rules are

inapposite because, here, the municipal court imposed the lesser remedy of

suppression pursuant to CrRLJ 4.7(g)(7)(i).

CrRLJ 4.7(g)(7)(i) provides that a court "may," once it is aware of a

discovery violation, "order such party to permit the discovery of material and

information not previously disclosed, grant a continuance, or enter such other

order as it deems just under the circumstances." Reflecting the purpose of the

criminal discovery rules, it contemplates sanctions against either party for a

discovery violation. One suitable sanction can be suppression.[49] Nothing in the

language of the rule requires a finding of prejudice before remedying a discovery

violation with something less than dismissal.

The City relies on State v. Salgado-Mendoza[50] and State v. Barry[51] to argue

the defendant must prove prejudice from the violation of CrRLJ 4.7 to warrant a

remedy, but neither is apt. In Salgado-Mendoza, the court was considering

---

[48] E.g., State v. Martinez, 121 Wn. App. 21, 33-34, 86 P.3d 1210 (2004) (upholding dismissal under CrR 8.3(b) where Brady violations constituted prejudicial misconduct by the government).

[49] State v. Hutchinson, 135 Wn.2d 863, 882-83, 959 P.2d 1061 (1998), abrogated in part on other grounds, State v. Jackson, 195 Wn.2d 841, 856, 467 P.3d 97 (2020).

[50] 189 Wn.2d 420, 403 P.3d 45 (2017).

[51] 184 Wn. App. 790, 339 P.3d 200 (2014).

whether violations of CrR 4.7 required a remedy under CrR 8.3(b), which demands proof of prejudice to warrant a remedy.[52] And in Barry, the court was considering whether dismissal was warranted under CrR 4.7 or CrR 8.3, not whether a lesser remedy was appropriate.[53] The City fails to show CrRLJ 4.7(g)(7)(i) requires proof of prejudice from a discovery violation to warrant a sanction less severe than dismissal.

The City also argues the lesser remedy of suppression was not available because the municipal court did not engage in the necessary analysis before ordering it. Citing State v. Hutchinson,[54] the City asserts suppression is an "extreme remedy," so a trial court must weigh several factors before suppressing evidence as a discovery sanction.[55]

In Hutchinson, the court was considering whether the trial court abused its discretion when sanctioning the defendant pursuant to CrR 4.7 by excluding an expert witness who would be testifying in support of the defendant's diminished capacity defense.[56] The court explained the counterpart of CrRLJ 4.7(g)(7)(i), CrR 4.7(h)(7)(i) "allows the trial court to impose sanctions not specifically listed in

---

[52] 189 Wn.2d at 427, 430-31.

[53] 184 Wn. App. at 797-99.

[54] 135 Wn.2d 863, 959 P.2d 1061 (1998), abrogated in part on other grounds, State v. Jackson, 195 Wn.2d 841, 856, 467 P.3d 97 (2020).

[55] Appellant's Br. at 14-15.

[56] Hutchinson, 135 Wn.2d at 880.

the rule,"[57] including suppressing evidence.[58] But because suppressing a defense witness's expert testimony implicated the defendant's Sixth Amendment right to compulsory process,[59] the court explained excluding evidence is "an extraordinary remedy" that "should be applied narrowly" only after a court considers four factors.[60]

Such concerns are not present because the City, as the prosecuting authority, has no Sixth Amendment right to compulsory process of witnesses.[61] The City does not explain why the trial court must engage in an analysis designed to safeguard a defendant's right to compulsory process when remedying the prosecuting authority's discovery violation by suppressing evidence. Because the concerns underlying Hutchinson are not present here, the municipal court did not need to engage with those factors before exercising its discretion under CrRLJ 4.7(g)(7)(i) to sanction the City by suppressing evidence.

The corrective action report was discoverable under CrRLJ 4.7(a)(3) as impeachment material. Lange's discovery request triggered the City's duty to seek

---

[57] Id. at 881 (citing State v. Jones, 33 Wn. App. 865, 868, 658 P.2d 1262 (1983)).

[58] Id. at 883-84.

[59] See id. at 881 (explaining the court was construing CrR 4.7 "in light of the United States Supreme Court's decision in Taylor v. Illinois, [484 U.S. 400, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988),] which permits exclusion of defense witness testimony as a sanction for discovery violations").

[60] Id. at 882-83 (citing Taylor, 484 U.S. at 415 n.19).

[61] See Taylor, 484 U.S. at 410 (explaining the compulsory process clause "provides the defendant with a sword that may be employed to rebut the prosecution's case" and is utilized only upon "the defendant's initiative").

17

and disclose the report under CrRLJ 4.7(d), and it failed to do so. CrRLJ 4.7(g)(7)(i) gave the court discretionary authority to remedy the violation with a sanction less severe than dismissal. The court did so. The City fails to show the superior court erred by denying its request for a writ of review.[62]

II. RALJ Appeal

The City contends reversal was improper because the municipal court did not err by concluding exhibit 13 was admissible or by denying Lange's motion to sever. Lange argues reversal was appropriate because the municipal court's decisions "forced [him] into a Hobson's Choice of either stipulating to guilt on the IID charge or litigating the charge and facing extreme prejudice to the presentation of his DUI case."[63]

The morning of jury selection, the municipal court considered pretrial motions. Lange moved to exclude exhibit 13, a three-page abstract of his driving record dating back to 2007 compiled by the Department of Licensing. Lange's record included multiple DUI incidents, multiple DWLS violations, past IID notations, and other infractions. The court granted Lange's motion in part, allowing "any information that is contained in the driving abstract that pertains directly to these charges, which would be the suspended license and [IID], can come in pursuant to any proper foundational requirements."[64] The court ordered

---

[62] Because the City fails to show the municipal court acted illegally, we need not consider whether an adequate remedy existed at law for the alleged illegality. Holifield, 170 Wn.2d at 240 (citing Commanda, 143 Wn.2d at 655).

[63] Resp't's Br. at 47.

[64] CP at 626.

the City to redact the other portions of the exhibit, and Lange would be able to review and challenge the redactions. The parties then conducted voir dire and empaneled a jury.

The next morning, the City asked the court to reconsider its ruling about exhibit 13, arguing Lange's entire record was foundational for the IID and DWLS charges and it would be unfair to the City's case "to strip it down so much that the [Department of Licensing record] custodian is only saying 'Yes, this notion existed, and yes, he was suspended.'"[65] The court agreed all of exhibit 13 was foundational and asked Lange if he was "willing to make any sort of stipulation to the IID that . . . for the entire day of the alleged incident that [the Department of Licensing] validly required [the] defendant to have an [IID] at all times while driving."[66] The court acknowledged that such a stipulation "would lead to" Lange being found guilty.[67] It gave defense counsel "a moment" to discuss the matter with Lange, reminding them it had not yet ruled and was "just asking . . . a question at this point."[68]

Lange refused the court's proposed stipulation. At that point, the court said, "[The Department of Licensing] we're expecting to be called as the third witness, and I have six jurors waiting right now. Do we need to [have an ER 403 hearing

---

[65] CP at 659.

[66] CP at 657, 659.

[67] CP at 659.

[68] CP at 660.

about the prejudicial impact of exhibit 13] now, or can we wait?"[69]  Lange

suggested considering the prejudicial impact of exhibit 13 before opening

statements, and the court obliged.  After the court took 10 minutes to research and

consider the matter, the following exchange occurred:

> COURT:  [I]f there's no stipulation about the Department of Licensing having a valid reason to have a requirement of the ignition interlock device, foundationally, I don't see how it can't come in.  In fact, everything, every conviction that he has had under the relevant RCWs or [municipal] code would play into the foundation of whether or not it was a valid notation that was put on his driving record. . . . And so without a stipulation, the court would be inclined to allow an exploration of what were the statutes that were violated that triggered the [Department of Licensing] to make this requirement.

> DEFENSE COUNSEL:  Your Honor, I think . . . because of the overwhelming prejudice problem with this, I think maybe the solution[,] apart from having to do a stipulation, an alternative solution would be so I can make a motion to sever the IID and DWLS [charges] from the DUI [charge]. . . .

> COURT:  How is that timely, [Defense Counsel]?

> . . . .

> COURT:  Tell me why the interest of justice requires [severance] at this time?

> DEFENSE COUNSEL:  I think that—and I will note for the court that it—part of this is on me for—at least yesterday, when dealing with the motions in limine, it was my understanding that we would be able to redact certain portions of [exhibit 13] so as to cure some of this prejudice, and then this morning, we are now having this conversation. . . .

> COURT:  Alright.  There's no surprise here.  We've had notice of the amendment [to the charging document adding the IID and DWLS charges] since the case was first called for trial months ago. . . . I agree with counsel that there [are] significant prejudice issues here, but the motion to sever was not made timely.  And there's no new information here.  We have a jury empaneled at this point[.]

---

[69] CP at 660.

[A]nd I'm not comfortable severing the cases, and I don't think it would serve the interests of justice. But I will heavily consider a limiting instruction. . . .

DEFENSE COUNSEL: And, Your Honor, given your ruling, may I have an opportunity to speak with Mr. Lange again regarding a stipulation?

COURT: Sure.

DEFENSE COUNSEL: And, Your Honor, I think, given the court's rulings, the defense is willing to enter a stipulation as to the foundational requirements so as to cure any potential prejudice.[70]

Minutes later and before Lange and the City had agreed upon language for the stipulations, the court brought in the jury for opening statements.

Under these circumstances, the trial court's conclusion that exhibit 13 was admissible effectively compelled Lange's decision to consent to the stipulations. If the court's combined rulings about exhibit 13 and severance were incorrect, then we must determine whether Lange was prejudiced by an improper threat of admitting exhibit 13 without redaction as leverage to influence Lange into stipulating to multiple facts material to the DWLS and IID charges.

We review the court's decision to admit exhibit 13 without redaction for abuse of discretion.[71] A court abuses its discretion when its decision rests upon untenable grounds or was made for untenable reasons.[72] The City contends the court did not abuse its discretion by deciding to admit an unredacted exhibit 13 to

_____

[70] CP at 664-68.

[71] State v. Arredondo, 188 Wn.2d 244, 256, 394 P.3d 348 (2017) (citing Diaz v. State, 175 Wn.2d 457, 461-62, 285 P.3d 873 (2012); State v. Gresham, 173 Wn.2d 405, 419, 269 P.3d 207 (2012)).

[72] Id. (quoting State v. Mason, 160 Wn.2d 910, 922, 162 P.3d 396 (2007)).

prove both the IID and DWLS charges because "absent a stipulation[,] the City must present evidence that the criminal conviction was the basis for the suspension or notation."[73]

The City argues the entirety of exhibit 13 was admissible without redaction on the IID charge because Lange's prior offenses were the reason for the IID notation. The City misunderstands the IID ordinance.

SMC 11.56.350 states "[n]o person whose driving record includes a notation, pursuant to RCW 46.20.740, that the person may operate a motor vehicle equipped with an [IID,] shall operate a motor vehicle that is not so equipped." RCW 46.20.740(1) requires that the Department of Licensing "attach or imprint a notation on the driving record of any person restricted under RCW 46.20.740, 46.61.5055, or 10.05.140 stating that the person may operate only a motor vehicle equipped with a functioning [IID]." Although RCW 46.20.740(1) requires the Department to make an IID notation when one of three statutes is violated, whether that administrative requirement was met goes to the validity of the notation, not its existence.[74] The parties agree the City was not required to prove the validity of the notation.

---

[73] Appellant's Br. at 36.

[74] See Upward v. State, 38 Wn. App. 747, 752-53, 689 P.2d 415 (1984) (explaining the validity of underlying traffic offenses that caused a driver's license to be suspended were not required to prove a DWLS charge); see also City of Bellevue v. Montgomery, 49 Wn. App. 479, 481, 743 P.2d 1257 (1987) (relying on Upward to explain "the prosecution need not prove the validity of the underlying convictions" when proving a DWLS charge).

To prove a violation of SMC 11.56.350, the City had to demonstrate (1) Lange's driving record included a notation allowing him to operate only vehicles with a functioning IID, and (2) Lange operated a motor vehicle without an IID. The ordinance does not include the reason for the IID as an element of the charge. Thus, the reason for the notation is not required to prove an IID violation, and the question, addressed below, is whether the entirety of exhibit 13 was admissible to prove the IID charge.

The DWLS charge is based on SMC 11.56.320(A), which prohibits driving a motor vehicle in Seattle with a suspended or revoked license. In descending alphabetical order, SMC 11.56.320(B)-(D) distinguishes between DWLS in the first, second, and third degrees. The prohibited activity is the same for each subsection: driving with a suspended or revoked license. The degree of the crime changes based on the underlying reason the defendant's license was suspended or revoked.

Lange was charged with DWLS in the third degree under SMC 11.56.320(D)(5). For a conviction under SMC 11.56.320(D)(5), the City had to prove Lange drove with a license that had been suspended or revoked for one of the reasons listed in SMC 11.56.320(C) and not yet reinstated it despite being eligible. Relevant here are the parts of SMC 11.56.320(C) prohibiting DWLS due to a "conviction relating to a person under the influence of intoxicating liquor or

drugs" or due to an "administrative action taken by the Washington Department of Licensing under chapter 46.20 RCW."[75]

The parties do not dispute that "[t]he reason for the underlying license suspension is an essential element of any DWLS charge."[76] Thus, to obtain a DWLS conviction under SMC 11.56.320(D)(5), the City had to prove (1) the Department of Licensing had made a notation of suspension or revocation on Lange's driving record, (2) the reason for the notation, and (3) Lange failed to have his license reinstated despite having the option of doing so. Because the City had to prove the reason for the notation forming the basis of the instant suspension or revocation, the question, as above, is whether the entirety of exhibit 13 was admissible for that purpose.

Stated more broadly: considering what the City had to prove, was all of exhibit 13 relevant to the IID and DWLS charges? Relevant evidence tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[77] Irrelevant evidence is inadmissible.[78]

An unredacted abstract of Lange's driving record was not required to prove IID. On page 1 of exhibit 13, both the "Restrictions" and "Reinstatement" boxes

---

[75] The ordinance prohibits driving with a license suspended for any one of 19 different reasons, most of which are not germane.

[76] State v. Johnson, 179 Wn.2d 534, 543, 315 P.3d 1090 (2014) (citing State v. Smith, 155 Wn.2d 496, 502, 120 P.3d 559 (2005)).

[77] ER 401.

[78] ER 402.

state that Lange was required to have an IID "at least until 1/11/2026." The Reinstatement box also notes that the IID was required beginning on "1/14/2014." Nothing else in exhibit 13, including Lange's lengthy history of infractions and violations, was relevant to the IID charge under SMC 11.56.350.

Much of exhibit 13 was also irrelevant to the third degree DWLS charge. The first element of the charge, a suspension or revocation notation by the Department of Licensing, appeared on page 1 of exhibit 13; it states Lange's license is suspended, that he is restricted to a probationary license "until 1/11/2021," and he must complete multiple requirements for reinstatement. The second DWLS element, the reason for the notation, requires only the text identifying the past violations forming the basis for Lange's current suspension or revocation. But the abstract of Lange's driving record is three pages and includes a long list of violations, such as five unresolved tickets, many resolved tickets, including DUIs from 2003, 2004, 2011, and 2013, and a "drive record history" that includes other DUIs and infractions. Very little of exhibit 13 was relevant, and those irrelevant portions were inadmissible.

We also must consider the potential for undue prejudice from the admissible portions of exhibit 13.[79] ER 403 allows relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." When weighing the probative value of evidence against its potential prejudicial effect, a court can consider:

---

[79] State v. Powell, 126 Wn.2d 244, 264, 893 P.2d 615 (1995) (citing ER 403).

"the importance of the fact of consequence for which the evidence is offered in the context of the litigation, the strength and length of the chain of inferences necessary to establish the fact of consequence, the availability of alternative means of proof, whether the fact of consequence for which the evidence is offered is being disputed, and, where appropriate, the potential effectiveness of a limiting instruction."[80]

Applying these considerations under these circumstances raises concerns about the impact of Lange's past DUIs upon the fairness of trial. During trial, the City submitted two administrative suspension letters from the Department of Licensing as well as testimony from a Department of Licensing employee about those letters. Those letters stated that Lange's license was suspended for his failure to appear or respond to two different citations. Those citations, which are not for DUI, appear on the first page of exhibit 13 along with the IID requirement. SMC 11.56.320(D)(5) and .320(C) allow a conviction for third degree DWLS if the person's license was suspended or revoked "by reason of . . . [a]n administrative action taken by the Washington Department of Licensing under chapter 46.20 RCW."[81] The letters and portions of exhibit 13 showing that Lange's license was suspended due to administrative action provided adequate proof the State could—and, notably, did—use to prove the third degree DWLS charge. This evidence lowers considerably the probative value of any DUI conviction. And because the risk of prejudice from admitting proof of past DUI convictions was quite high as to the new DUI charge, the probative value of any relevant DUI conviction was

---

[80] State v. Bedada, 13 Wn. App. 2d 185, 193-94, 463 P.3d 125 (2020) (quoting State v. Kendrick, 47 Wn. App. 620, 628, 736 P.2d 1079 (1987)).

[81] SMC 11.56.320(C)(18).

26

outweighed by the risk of undue prejudice in these particular circumstances. The trial court abused its discretion by admitting the portion of exhibit 13 containing the relevant DUI conviction.

The trial court also erred by denying Lange's motion to sever as untimely.[82] The record clearly shows Lange moved to sever the DUI charge from the IID and DWLS charges because of the court's decision to admit exhibit 13 without redaction, which was a complete change from its decision only a day earlier. Although Lange had known for more than two months that all three charges would be tried together, Lange's counsel made a reasonable assumption the trial court would not abuse its discretion by admitting irrelevant and unduly prejudicial evidence.

CrRLJ 4.4(a)(1) provides that a motion to sever "may be made before or at the close of all the evidence if the interests of justice require." As the City agreed at oral argument, neither exhibit 13 nor the evidence of Lange's inebriation was cross-admissible under these circumstances. Thus, Lange's motion to sever was timely and the interests of justice strongly favored consideration of its merits. The municipal court improperly denied Lange's motion to sever.[83]

---

[82] The parties disagree about whether we should review this issue de novo as a question of law interpreting CrRLJ 4.4 or for abuse of discretion as a fact-specific question. Regardless of the standard applied and for the reasons discussed, the municipal court erred.

[83] We note that the court appeared to engage in a cursory analysis of the merits of a motion to sever but did so only after denying the motion as untimely, after Lange agreed to the stipulations and after exhibit 13 would no longer be put before the jury. See CP at 668-69.

The municipal court's erroneous decisions left Lange a choice that was no choice at all. He was in the untenable position of either accepting the unredacted admission of exhibit 13, which would be unduly prejudicial to the more serious DUI charge, or stipulating to key elements of the DWLS and IID charges. And the court placed him in this position all while a sworn jury was waiting outside the courtroom for opening statements to begin. These rulings generated considerable and avoidable prejudice. Because this prejudice originated with the trial court's erroneous decision to conclude exhibit 13 was admissible without redaction, the decision prejudiced Lange's right to a fair trial.

Therefore, we affirm the superior court's denial of the City's motion for a writ of review, and we affirm the superior court's ruling on RALJ appeal reversing Lange's convictions.

_____

WE CONCUR:

_____          _____